Lee v. Grocery Haulers, Inc. Mr. Bocanis, you have reserved three minutes for rebuttal. With that, you may proceed. Sure. Thank you. John Bocanis for the plaintiff appellate in this matter, representing Robert Lee. This appeal arises from the granting of a summary judgment by the district court pertaining to claims of retaliation and discrimination on the basis of race. And what primarily was at issue and found by the trial court, which we raise this appeal on, is the fact that the trial court decided to question the fact rather than just finding whether a material fact existed pertaining to whether the defendant was made aware of a discriminatory racial remark made by a supervisor in the workplace. Right. And I think you've put your finger on it, but I guess I'm looking at what we would call around here a 56.1 statement, but I guess up in the District of Connecticut it's 56.8. It's whatever. It's the statement of undisputed facts. Right. And so number 15 that the defendants put forward was plaintiff made no claims to Hagen or to Bender that Boca made any race or color-based statements to him or behaved in such a way to make plaintiff think that Boca harbored any racial or color animus toward him. And the response to that doesn't dispute it. I mean, paragraph 15 of the plaintiff's response disagrees with the characterization of Boca's statements, but it doesn't challenge or even engage with the assertion that no claims were made to Hagen or Bender. Well, it was certainly challenged in summary judgment, and the court recognized that there was a dispute as to what was said. And the reason I raise that is in the court's decision, the court indicates that the record does not reflect, and when it refers to the record, it refers to the affidavit by the plaintiff submitted on summary judgment and also deposition testimony. Well, the deposition testimony, I mean, your client just asked again and again what he said to Hagen and Mulcahy primarily, what he said about the incident. And he just wouldn't answer, it seems like. Well, I accept that. Am I wrong about that? Am I mischaracterizing?  And I think that's what is exactly at issue, is that in the deposition testimony, specifically, he does indicate in the deposition testimony, it's even cited by the district court decision page 8, where he's asked about what was said to Mr. Hagen about the incident. And he says specifically, he says that he referred to the incident, and that became a big issue in terms of the dispute. Well, what was the incident that was discussed? And in the deposition answer, and again, that's at page 166 of the deposition, and he specifically indicates that the incident, the incident when he came into the office, when he was throwing things around, and then the — this is, again, the plaintiff answering the question, as to what he told Mr. Hagen, he came into the office, you know, about my people only being good for working in the fields. Well, that's a description of the incident. It's not clearly a description of what was said to Hagen. And elsewhere in the deposition, let me just put this question to you. He asked, are you able to recall the general words that you communicated to Hagen? And his answer is, I'm able to recall that Mr. Hagen was very aware that there was an issue between myself and Mr. Boca that needed to be addressed with human resources. And that's a phrase that is used again and again. He knew there was an issue that needed to be addressed with human resources. But he specifically answers it in the excerpt that is on page 8 of the court's decision in the deposition testimony that's cited there, because it specifically indicates, what did you tell — it says, what was the incident that you told Mr. Hagen about? So that's a specific question by the defendant's counsel. And he answers specifically about the racial comment about that you people are only good for working in the fields. And that's specifically in the deposition response. Right. But isn't that — I mean, I think your initial description of it, you actually — your, I think, misstatement in looking at it, you started to describe the question as, what did you tell? And then you were looking back, and it says, in fact, what it says — it doesn't say, what did you tell? It was, what was the incident — That you told — what was the incident that you told Mr. Hagen about? Right. And so to the extent that these specific comments about, you know, what was said, I mean, to me, that suggests perhaps it's going more to the questioner. The questioner is saying, you know, what incident did you tell him about? And he said, well, the incident with these statements. That doesn't — I don't see how that necessarily suggests that he's saying, and I told these statements to Hagen. Well, I think, again, on summary judgment, all inferences are made in favor of the nonmoving party. And we review the evidence in the favor of the nonmoving party. And with regard to the interpretation of this language, I think in the context of what was said, together with the affidavit submitted opposing summary judgment, I think it presents a very clear question of fact that he told the defendant what the discriminatory remark in conduct was. And specifically, in this excerpt, just even in this one excerpt, without looking at the affidavit, again, the inferences to the nonmoving party on summary judgment, it's very clear. What the incident was at issue was the incident where he came in, Mr. Boca came in — I mean, but you keep referring to that section. But then specific questions are followed up during the deposition. Okay, so what did he exactly say? And he doesn't say, I told Hagen and Bender or anybody else that this is what Boca said. Well, the weight of the evidence doesn't go to how many times he has to describe the incident. And, again, that might deal with credibility, weighing of the evidence. That's not the subject for a motion for summary judgment. Maybe during the course of the trial you're going to have two conflicting sides as to what was said, when it was said, and what descriptive detail it was said to the defendant. But with regard to the summary judgment, I think the record itself, contrary to what was said, whether there was explicit evidence indicating to the defendant about the derogatory racial comment being made, I believe just looking at this excerpt, he's answering the question as to what he told Mr. Hagen and what the incident was, which was the racial comment being made about you people only working in the fields. So we can't ignore at this stage the proceedings on summary judgment, the inference in favor of the non-moving party where specifically he indicates what that incident was. But you're mischaracterizing what the question was. The question was what was the incident that you told Mr. Hagen about. It's not what did you tell Mr. Hagen about the incident. Right. And so. Well, I think in the context of that, of what was said, this is the excerpt from the deposition as to how the defendant became aware of the misconduct of another supervisor. And I think in the context of this deposition, I know we're looking at an excerpt. You take this together with looking at the affidavit. And I think the inference is very favorable to the plaintiff here. So what are we supposed to do with this, with the affidavit? In other words, if you have a deposition where a person doesn't say that they told anybody about a particular incident, you get to cure it with an affidavit, you think? Well, I think it could be used in conjunction. And it certainly doesn't contradict what was said at the deposition also. So I think on the summary judgment stage, again, looking at the inferences in favor of what was said to the defendant on a non-moving party, question of fact certainly could be found on the record as presented, particularly when the incident is the incident that arose that was the subject of Mr. Lee complaining to the employer on the retaliation part and also on the discriminatory conduct part as to what was done by Mr. Boca on that particular day when he came in and started throwing things around and made that racial remark. And that is the incident about the working in the fields that he specifically cites to. So I think, again, looking at this in the vacuum of a deposition testimony, affidavit, and a motion for summary judgment, there's certainly sufficient information in the record that was provided on the summary judgment to find the material question of fact and not to rule and decide the question of fact, which if we look at it here, again, in excerpts of testimony, but I think if we put this together with the other record evidence, being the affidavit, that it's sufficient to raise the material question of fact in this case. All right. Well, you've reserved three minutes for a rebuttal. Thank you. We'll now hear from Mr. Leik. Am I pronouncing that right? You are, Your Honor. Thank you. Okay. May it please the Court. Adam Leik from Zangari-Cone-Cuthbertson-Dulingrello PC for the Defendant Appellee, Grocery Haulers, Inc. In this case, the plaintiff was given copious opportunities to – or firstly, during his actual employment, the plaintiff was given copious opportunities to report any discriminatory conduct. In the record, there are written accounts of what the plaintiff reported, and there is, in fact, a text message that the plaintiff himself sent in which he makes no allegations of any discriminatory conduct. And then, as you were just discussing with opposing counsel, during his deposition, he was given numerous opportunities when he could have clearly answered, I told X person Y. And he never did. So based on the entire record, not just on this. Is it fair to say, though, I mean, with regard to the excerpt that we were discussing with your adversary, that the exchange is – is the exchange arguably ambiguous as to what, you know, whether or not when he's giving the descriptors of what was said, that that was just explaining what the incident was, or whether or not it's reasonable to infer that he's saying that's what was relayed to Hagen. And at the summary judgment stage in particular, is it appropriate for us to read the record in that way? I don't think it is appropriate to read the record in that way, given the whole record and the numerous opportunities when a question was asked, clearly asking for what did you say? Either what did you directly say, what were your exact words? Or in general, what did you say? What did you communicate? Although there were all of those questions asked, which could have elicited a much clearer response if, in fact, the plaintiff had ever made any such statement, and he did not. Now, they – the plaintiff likes to characterize what the district court did as being a credibility assessment. And first, the district court did not assess his credibility. And secondly, this court has held that in certain circumstances, such as this one, or in certain circumstances, it would be proper for a court reviewing a motion for summary judgment to make a credibility determination. So even if this court concludes that Judge Arterton did so, she did so properly. So first, why was it not a credibility determination? Because if everything in this record went before a jury, if Mr. Lee testified in front of a jury, just as he did in response to Attorney Dewell's questioning, and a jury had all of the other evidence in terms of the affidavits of other individuals and Mr. Lee's own failure when given the opportunity to make a record of his claims while he was at grocery haulers, it would be – no reasonable jury could find for him. What about the dispute over whether he was told when he was hired that he would be subject, he said, to a progressive disciplinary program, that that was the policy and practice of the company, and that he wouldn't be let go if a problem developed, that that's how the company would handle it. And I gather there was some debate over whether that was, in fact, told to him. And there's also some question about how he – whether he changed his position in reliance on that. But why is it – I mean, that's a general policy. It's a standard practice. It seems pretty clear that the company did not implement that here. There were events that happened over time that gave some cause for concern, and there was no – it seems that there was no plan put into effect. So why wouldn't that be enough as a basis for inferring discrimination to how other employees were treated as comparators? There – so throwing in the word as comparators made me uncertain whether we're talking about this in the promissory estoppel context or the discrimination context. Let's talk about it in the discrimination context to begin with, and then we can get to promissory estoppel and so on. But just as a basic – you know, if that was the company's policy, it treated its employees the way it was told, it treated its employees that way. He was not treated that way. He did not have such a plan put in place. And we can infer that other employees did since that was the company's practice. Why isn't that a basis for discrimination? Well, the practice – there's a distinction between having a practice of progressive discipline and always implementing a performance improvement plan before the company can make any termination decision. Now, there's nothing in the record that would suggest that anyone made the representation to Mr. Lee that the company could not terminate him unless it had already given – to a formal progressive – or a formal performance improvement plan. And – Well, he says his understanding was different, though, right? Well, he talked – in his deposition testimony, he says that he's never heard of a performance improvement plan, that Mr. Mulcahy never talked about performance improvement plans with him, but only about progressive discipline. And he was given progressive discipline. There were write-ups issued to him. There were warnings issued based on his other misconduct. And then the record shows that in this case, they were prepared to give him a performance improvement plan, and then he walked out. So there's no – and there's no evidence of any other employee who – against other employees and nonetheless not being terminated and nonetheless being given a performance improvement plan. So there really aren't any comparators. You know, the – there are – you know, this gets back to – so the only alleged comparator is Boca, who had, while the same level as the plaintiff, had much more seniority. And there are no allegations of Mr. Boca making any threats of physical violence towards anyone. And then we get back to the other point of there's nothing in the record showing Mr. Boca making any discriminatory statements. So there's simply nothing that would suggest that Mr. Boca should be treated in the same way as the plaintiff because the plaintiff's actions – it doesn't suggest that Boca made discriminatory statements. I think what you mean is the record doesn't reflect that management knew of those statements. Yes, Your Honor, that's correct. Okay. So in making a discipline determination, management can only act on what information is presented to it. And it's clear that management was presented with evidence that the plaintiff had engaged in threats of physical violence. And there's evidence in the record – and there – the evidence in the record demonstrates that plaintiff did not report any discrimination on behalf of Boca. And finally, you know, the record shows – statement or something else? When I say the record reflects that plaintiff did not make any claims, I'm talking about the written description by Hagen of the phone call to – from Lee and the text message that Lee sent to Bender. Okay. And I may have flip-flopped Hagen and Bender there. I'm not sure. And then also, while it was before the final incident, he did make a – also Mulcahy took a lengthy written statement. And in his deposition testimony, Lee claimed that as of the time when Mulcahy took the statement, there was already some discriminatory conduct by Boca. But that's not in the statement. So those are the three things prior to termination that the – in which the absence of any claim of discrimination is clear, such that the court could draw the inference that – or such that it was clear to the court that he had never made those statements. I'd also like to jump back to – on credibility. The court has held that in certain cases, a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised genuine issues of material fact to be decided by a jury. Are there inconsistencies here in the plaintiff's testimony? I would say there's – there are not. This goes back to those two points I tried – I started with, that we say there are – there was no credibility determination that needed to be made by Judge Arderton because his statements are consistent with him never having reported. But even if there was one statement that could arguably have – that could arguably suggest that he had reported, then given the numerous statements by him and the rest of the evidence that he did not make any such reports, then the court could have drawn the conclusion that summary judgment should nonetheless enter against him. So I was referring to the Rojas case at 660 F. 3rd, 98 was another summary judgment granted notwithstanding the summary – the district court having made credibility determinations. I see I am out of my time. All right. Okay. Well, we'll hear from Mr. Berchanitz for three minutes of rebuttal. Regarding the issue of credibility, the court – and I think it's important to note that on summary judgment, the first issue that had to be decided was whether there was a discharge. Because the defendant raised there was no discharge in the district court. And making that determination, though, indicated that a reasonable jury could believe the defendant's explanations and conclude that the plaintiff had been discharged. I should say they could – the reasonable jury could disbelieve the defendant's claim explanation as to what happened because the defendant claims that Mr. Lee walked out of that meeting. That's what the defendant's claim was. Mr. Lee's claim was that he was discharged in that meeting. And I raise this point because the court, instead of deciding that issue, found that there's a material question of fact in her decision. As to discharge. Correct. And I think it's important to show that as a contrast to what was done from that – jumping from that issue where the court found summary judgment would not be granted on that basis because of the two conflicting positions. Whereas on the retaliation discrimination issue, where we have conflicting record evidence as to what was said and what was interpreted as to what was said, that the court went ahead and decided the credibility issue in contrast to what was presented as to the discharge issue and on summary judgment decided. What's being done here is the record is being read in favor of the moving party by the defendant. Except you're asking us – I mean, we're supposed to draw all inferences, obviously, in favor of your client at this point. But you're asking us not to just do that, but to also change the question that was asked to make the answer more favorable for your client. The question that was asked was, what was the incident that you told Hagen about? That doesn't – the next question would be, and in fact was repeatedly, what did you tell Hagen about the incident? And you're trying to short circuit that and saying that because there was a conversation about the incident, we should infer that it included all the details of that incident. Well, I think that that's a fair reading of his response in the deposition and also in the affidavit, particularly on summary. Then why was it so hard to answer the question that was repeatedly put to him? What did you say? Right, and I think with regard to the excerpt that was presented in the deposition, although the defendant was dissatisfied with the answer to the question as to what was explicitly said, that doesn't change it on summary judgment. That changed the burden of proof to put it on the non-moving party to disprove the burden that's supposed to be on – The burden for a prima facie case, it's not high, but it exists. It's a de minimis. It's a de minimis, and the trial court didn't get beyond that de minimis standard, which is what our claim there here is that with regard to what was presented, a clear interpretation could be made with regard – on summary judgment that he specifically told Mr. Hagen about the racial incident that occurred, which he refers to. But when asked that question, he never said so. Well, I guess that's where the record I would claim is in disagreement with that because he does mention it not only here in this answer on page 8 of the court's decision but also in the affidavit. In addition as to also what was presented in terms of showing an inference of discrimination, the policy as was asked of defendants' counsel, the policy of a progressive disciplinary to be used in disciplinary matters was not used, and that reflects an inference of discrimination when there's an established policy that exists and was not used with regard to discipline in this case could show an inference of discrimination. And certainly there was talk about using the performance improvement plan in their own documentation that was submitted on summary judgment, which was not used. They went outside their policy. And in addition, the statement – there's a mention of a statement that was written by the plaintiff to Mr. Hagen describing activity that was going on at work. The statement that was referred to was – and it's in the record – was July 23, 2018, which was about six days prior to the racial comment being made about working in the fields on July 29. So when they're referring to – well, he never mentioned anything in his statement to the defendant. That statement to the defendant was about a phone call that took place on July 15th pertaining to Mr. Boca saying that he was going to come down and speak to him in his face. And by the way, as indicated on the – and it's in the record, this Mr. Boca is the same individual who has a past incident of being accused of discriminatory conduct towards employees, which is part of their record in this case but seems to have been glanced over. So I think when you put that in front of a fact finder, that we have Mr. Boca, who has a past incident of discriminatory conduct based on race, together with what was described as to what was said, and that's a – it's a he says statement about working in the fields taken together presents a sufficient question of fact for a fact finder, not making – and not for the trial judge at summary judgment deciding this issue, which should not have been decided on summary judgment. All right. Okay. Well, thank you. We will reserve decision.